# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ACES TRANSPORT, INC.,**

       **Plaintiff,**

       **v.**                            **Case No.  05-2434-JWL**

**RYAN TRANSPORTATION SERVICES,**
**INC. d/b/a RTS FINANCIAL SERVICES**
**and DOES 1 through 20, inclusive,**

       **Defendants.**

_____

## MEMORANDUM AND ORDER

In this lawsuit, plaintiff Aces Transport, Inc. (Aces) alleges that defendant Ryan Transportation Services, Inc. (Ryan) wrongfully caused a UCC-1 financing statement to be recorded against Aces' assets, wrongfully forced Aces to enter into a factoring agreement with Ryan at usurious interest rates, wrongfully forced Aces to pay the debts of another company, and interfered with Aces' contracts with others.  Aces asserts various common law and state statutory claims against Ryan.  This matter is currently before the court on Ryan's motion to dismiss (doc. #47).  For the reasons explained below, this motion is granted in part and denied in part.  Specifically, it is granted with respect to Aces' negligent interference with contract (Count VI), Kansas Declaratory Judgment Act (Count IX), and Kansas usury law (Count X) claims.  The motion is denied in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

According to the allegations in Aces' first amended complaint, the background of the parties' dispute began with a business relationship between Ryan and a company called Southern Logistics, LLC, a company which was formed by Baldo Barragan and Mike Turner. Due to financial difficulties, Southern Logistics closed on or about March of 2004 and later filed for bankruptcy. At the time Southern Logistics closed, it had an outstanding debt to Ryan of approximately $100,000.

Prior to that time, in or about December of 2003, Mr. Barragan and another individual, Javier Gutierrez, had organized Aces. Aces is organized under the laws of Nevada and has its principal place of business in California.

Aces alleges that on April 15, 2004,[2] Ryan wrongfully caused a UCC-1 financing statement to be recorded against all of Aces' assets "[w]ith no contract or other business relationship with [Aces] and with no legitimate basis to do so." First Am. Compl. (doc. #33) ¶ 9, at 2. Ryan knew that obtaining prompt financing was critical to the survival of Aces' business. Aces tried to obtain financing but was unable to do so because of the financing statement, and Ryan knew that Aces was unable to obtain financing with Ryan's financing

---

[1] Consistent with the well established standard for evaluating a Rule 12(b)(6) motion to dismiss and, by corollary, a Rule 12(c) motion for judgment on the pleadings, the court accepts as true all well pleaded factual allegations in Aces' first amended complaint (doc. #33).

[2] Actually, Aces' amended complaint alleges that Ryan filed the financing statement in or about May of 2004, but in the parties' briefs and memoranda they agree that the financing statement was filed on April 15, 2004. The correct date is helpful to understanding the nature of Aces' claims, and for that reason the court uses the undisputedly correct date here.

statement on record.   Despite Aces' demand for Ryan to withdraw or release the financing statement, Ryan refused to do so.  Aces' business was on the verge of collapse.

Aces alleges that on or about April 21, 2004, it was forced into signing a factoring agreement with Ryan and was forced to pay Southern Logistics' debt.  The factoring agreement was secured by Aces' accounts receivable, related instruments, and proceeds thereof.   Under the agreement, Ryan was permitted to file a financing statement to perfect its security interest in the collateral.  Ryan filed those financing statements.

In September of 2004, Mr. Barragan informed Ryan that Aces would no longer pay Southern Logistics' debt.   In response, Ryan cut off Aces' funding under the factoring agreement, cut off Aces' ability to view its accounts online, and seized Aces' reserve account to pay Southern Logistics' debt.   Once again, in order to avoid the collapse of its business, Aces sought alternative financing.   Specifically, Aces sought financing from Phoenix Capital Group, LLC (Phoenix).   Phoenix agreed to provide financing to Aces under certain terms and conditions, but Ryan refused to permit Phoenix to pay the amounts owed under the factoring agreement.   After being confronted with the threat of litigation, Ryan finally permitted the debt to be paid but Ryan converted Aces' reserve account and applied it to Southern Logistics' debt. After Aces' debt was paid in full, Ryan sent a letter to every customer of Aces and instructed them to send payments on accounts receivable directly to Ryan.

Aces alleges that, although Ryan calls itself a factor, in reality Ryan is a lender.   Aces alleges that one indicator that the transaction is a loan rather than a purchase of receivables without recourse is that the factoring agreement requires Aces to repurchase unpaid accounts.

Additionally, the factoring agreement provides for a "factoring fee" of 2.5% per invoice per month which, Aces alleges, in reality is an interest rate. This translates to an interest rate of 30% per annum.

Aces' amended complaint alleges that Ryan's conduct occurred in California and was aimed at Aces, a California resident. Aces alleges that, as a consequence, its claims are governed by California law. Aces asserts ten claims against Ryan: (Count I) payment under duress; (II) declaratory relief concerning usurious interest in violation of the California constitution; (III) money had and received; (IV) rescission of the factoring agreement; (V) intentional interference with contract; (VI) negligent interference with contract; (VII) conversion; (VIII) violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (IX) declaratory relief under the Kansas Declaratory Judgment Act, K.S.A. §§ 60-1701 *et seq.*; and (X) violation of the Kansas usury statutes, K.S.A. §§ 16-201 *et seq.*

Ryan now moves to dismiss Aces' claims on the grounds that Aces' amended complaint fails to state a claim upon which relief can be granted. Ryan's predominant argument is that Aces' complaint fails to state a claim for a violation of California usury laws because the parties' factoring agreement contains a Kansas choice-of-law provision, Kansas law would apply even in the absence of the choice-of-law provision, and under Kansas law the factoring agreement is not usurious as a matter of law. Ryan also asks the court to dismiss Aces' negligent interference claim because it is not a recognized cause of action under California or Kansas law, as well as Aces' claim under the Kansas Declaratory Judgment Act because this

4

claim is procedurally improper.   Additionally, Ryan states that it renews and incorporates by reference the arguments and analysis raised in its previously filed motion to dismiss.   The court, however, already denied Ryan's original motion.   As such, the court will not revisit all of those issues.   Rather, the court will confine its analysis to the issues raised by Ryan in its current motion, but the court will consider Ryan's previous arguments to the extent that Ryan may have previously elaborated more fully on those specific issues.

## STANDARD FOR DISMISSAL

Ryan filed the current motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.   By way of background, Ryan filed a prior Rule 12(b)(6) motion and the court denied that motion without prejudice.   *See generally Aces Transport, Inc. v. Ryan Transp. Servs., Inc.*, Case No. 05-2434, 2006 WL 618272, at *1-*2 (D. Kan. Mar. 10, 2006).   In doing so, the court intended to afford Ryan an opportunity to renew the motion.   Instead, Ryan filed its answer on March 20, 2006.   *See* Answer (doc. #46). Then, on March 31, 2006, Ryan filed its second motion to dismiss, which is the motion that is currently at issue.   Because Ryan filed its answer before filing the current motion to dismiss, the motion is not a Rule 12(b)(6) pre-answer motion.   *See* Rule 12(b) ("A motion making any of these defenses shall be made before pleading . . . .").   Nonetheless, the defense of failure to state a claim upon which relief can be granted can be raised by motion for judgment on the pleadings.   *See* Rule 12(h)(2).   Accordingly, the court will construe the

5

current motion as one for judgment on the pleadings pursuant to Rule 12(c).  *See* Rule 12(c) ("After the pleadings are closed . . . any party may move for judgment on the pleadings.").

A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard that applies to a Rule 12(b)(6) motion.  *Society of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005).  Thus, judgment on the pleadings is appropriate only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief," *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.  *Beedle*, 422 F.3d at 1063.  The issue in resolving such a motion is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted); *accord Beedle*, 422 F.3d at 1063.

It is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss.  *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002).  However, it is "accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *Id.*

6

(quotation omitted).   The rationale for this is that "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).   Ryan has submitted a copy of the factoring agreement between Aces and Ryan.   This document is central to Aces' claims and Aces does not dispute its authenticity.     Accordingly,  in  resolving  the  current  motion  the  court  will  consider  this agreement.

## DISCUSSION

For  the  reasons  explained  below,  the  court  will  deny  Ryan's  motion  with  respect  to Aces' usury claims under California law because Ryan has not shown that it appears beyond a doubt that Kansas law necessarily applies to Aces' usury claims.   Aces' complaint, however, does fail to state a claim for negligent interference with contract under Kansas or California law.   Also, Aces' claim for relief under the Kansas Declaratory Judgment Act is procedurally improper and its usury claim under Kansas law fails to state a claim as a matter of law.   As such, the court will grant those aspects of Ryan's motion and dismiss Counts VI, IX, and X of Aces' amended complaint.

**A.      Claims Based Upon California Usury Law**

Ryan contends that most of Count I and Counts II, III, IV, and VIII of Aces complaint fail to  state  a  claim  insofar  as  they  are  based  on  California  usury  law.    Ryan's  argument  in  this respect is twofold.   First, Ryan contends that the factoring agreement between Ryan and Aces

7

contains a valid and enforceable Kansas choice-of-law provision.  Second, Ryan contends that, even in the absence of the choice-of-law provision, Kansas law applies.  Ryan argues that, under either scenario, California usury law does not apply and therefore Aces' complaint fails to state a claim for violations of California usury law.

In determining the applicable law, the court first notes that this case was transferred to this court by the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1406(a).  In the court's prior Memorandum and Order denying Ryan's motion to dismiss, the court noted that this meant that the choice-of-law rules of the transferor court would apply.  *Aces Transport, Inc.*, 2006 WL 618272, at *1 (citing *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 n.3 (10th Cir. 2001), and *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996)).  Despite the court's prior ruling and the clarity of the Tenth Circuit law on this issue, Ryan nonetheless contends that this court should not apply California choice-of-law principles because venue was improper in California and, consequently, Aces should not receive the benefit of California choice-of-law principles.  Ryan contends that this court should apply Kansas choice-of-law rules instead.  In support of this argument, Ryan relies on *Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518 (5th Cir. 2001), and *Murphy v. Klein Tools, Inc.*, 693 F. Supp. 982 (D. Kan. 1988), both of which held that a transferee court should apply the choice-of-law rules of its forum state rather than those of the state law of the transferor district court following a transfer for improper venue pursuant to 28 U.S.C. § 1406(a).  Although the court understands and appreciates the logic of such an approach, neither of these cases is binding

8

precedent on this court.   This court must follow controlling Tenth Circuit precedent on this issue.

Two Tenth Circuit cases clearly reveal that this court must apply California choice-of-law principles because the federal court in California transferred the case to this court pursuant to 28 U.S.C. § 1406(a) for improper venue.   In *Doering*, the federal district court in New Jersey had transferred the case to Colorado pursuant to § 1406(a) for improper venue.   259 F.3d at 1209.   The Tenth Circuit noted that the transferee court must follow the choice-of-law rules of the transferor court unless the transferor court lacked personal jurisdiction, in which case the choice-of-law rules of the transferee court apply.   *Id.*   Consequently, the court's first task was to determine whether the district court in New Jersey had personal jurisdiction over the defendant.   *Id.*   The court determined that the federal court in New Jersey had lacked personal jurisdiction over the defendant and therefore the choice-of-law rules of the transferee court (Colorado) applied.   *Id.* at 1210.   The Tenth Circuit applied this same principle in *Trierweiler*, 90 F.3d at 1523.   In *Trierweiler*, the court stated the general rule that the transferee court must follow the choice-of-law rules of the transferor court except when the transferor court lacks personal jurisdiction over the defendant, in which case the transferee court's choice-of-law rules apply.   *Id.* at 1532.   The Tenth Circuit determined that the choice-of-law rules of the transferor court (Michigan) applied to the sole defendant over which the federal district court in Michigan had personal jurisdiction, but that the choice-of-law rules of the transferee court (Colorado) applied to the rest of the defendants over which the federal court in Michigan lacked personal jurisdiction.   *Id.* at 1533-35.

9

In this case, then, this court must apply the choice-of-law rules of the transferor court unless that court lacked personal jurisdiction over Ryan.   Ryan does not contend that the federal district court in California lacked personal jurisdiction over Ryan.   Instead, the issue in this case was solely one of improper venue based on a clause contained in the factoring agreement which designated the state and federal courts for Johnson County, Kansas, as the exclusive forum for the parties' disputes.   Accordingly, this court must apply the choice-of-law rules of the federal court in California.   That court was sitting in diversity and therefore was required to apply the choice-of-law principles of the state in which it sits.   *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).   Thus, California choice-of-law rules determine the law to be applied in this case.   *See Bassidji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005) (stating court would apply California choice-of-law principles in diversity case).   With this threshold issue resolved, then, the court will turn to an application of those California choice-of-law rules.

      1.      **Enforceability of Choice-of-Law Provision**

The choice-of-law provision contained in the factoring agreement between Ryan and Aces states as follows: "This Agreement is accepted and made in the state of Kansas and this Agreement and the rights of the parties hereunder shall be interpreted under and governed as to construction, enforcement and validity by the law of the state of Kansas."   California follows the approach of the Restatement (Second) of Conflict of Laws § 187, which reflects a strong policy favoring enforcement of contractual choice-of-law provisions.   *ABF Capital Corp. v. Osley*, 414 F.3d 1061, 1066 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1148 (2006);

*Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151 (Cal. 1992).   Under this approach, the court enforces the choice-of-law provision if the chosen state has a substantial relationship to the parties or their transaction unless the chosen state's law is contrary to a fundamental policy of California.   *Nedlloyd Lines B.V.*, 834 P.2d at 1151-52.   But, the comments to § 187 explain that this approach does not apply where the validity of the agreement containing the provision has been challenged.   *See* Restatement § 187 cmt. b (whether consent to the inclusion of a choice-of-law provision was in fact obtained by improper means such as misrepresentation, duress, or undue influence should be "determined by the forum in accordance with its own legal principles").

In this case, Count IV of Aces' amended complaint is a challenge to the validity of the factoring agreement itself.   In this claim, Aces seeks to rescind the agreement because, Aces alleges, it entered into the agreement solely because of Ryan's duress, fraud, and undue influence.   Aces alleges that Ryan wrongfully recorded a UCC-1 financing statement on Aces' accounts receivables before entering into the factoring agreement; that Ryan's wrongful recording of the financing statement prevented Aces from obtaining financing necessary to operate its business and would have caused the loss of all of Aces' business; that Ryan did not inform Aces that Ryan was not qualified to do business in the state of California or that it did not maintain a California finance lender's license in compliance with California law; and that Ryan falsely represented to Aces that it had a right to a lien on all of Aces' assets by virtue of the fact that it filed the financing statement.   On the grounds of these alleged misrepresentations and Ryan's alleged concealment of material facts from Aces, Aces seeks

(among other things) a declaratory judgment that Aces' factoring agreement with Ryan is rescinded. *See* Am. Compl. (doc. #33), ¶ 1, at 14. If this claim is meritorious, then, the factoring agreement and, correspondingly, the choice-of-law provision, will be rescinded. As such, the merits of Aces' rescission claim, which is a challenge to the validity of the agreement itself, must be resolved before the court can determine whether the Kansas choice-of-law provision in the agreement is enforceable. *See Unarce v. Staff Builders, Inc.*, Case Nos. 93-16984, 93-17094, 1995 WL 418322, at *1 (9th Cir. July 13, 1995)[3] (holding the district court should have considered the legitimacy of the plaintiff's economic duress claim before considering the choice-of-law provision in the agreement); *It's Just Lunch Int'l, L.L.C. v. Polar Bear, Inc.*, Case No. 03-2485, 2004 WL 3406117, at *2 (S.D. Cal. Apr. 29, 2004) (court declined to give effect to choice-of-law provision on a motion to dismiss where the plaintiffs challenged the validity of the agreement through claims of fraud and misrepresentation); *see also Dunes v. Hospitality, L.L.C. v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488-89 (S.D. 2001) (reversing trial court's enforcement of Minnesota choice-of-law provision under the principles stated in the Restatement § 187, cmt. b, because genuine issues of fact existed under South Dakota law as to whether the plaintiff was forced to enter into the agreement because of fraud and economic duress).

Ryan points out that the federal district judge in California rejected Aces' arguments of duress and found the forum selection clause, which is a part of the factoring agreement just

---

[3] The court cites this unpublished Ninth Circuit case for its persuasive value on a material issue under California law.

like the choice-of-law clause, to be valid and enforceable, thus transferring the case to this court.  The court understands Ryan's argument in this regard to be that because the judge in California rejected Aces' arguments that Ryan forced it to enter into the agreement by improper means such as duress, fraud, and undue influence, this court is bound by that finding.  But Ryan's argument on this point is without merit because it does not adequately consider the difference between the issues presented to the California federal court and this court.   The California federal court was confronted with this issue in the context of Ryan's motion to enforce the forum selection clause and transfer the case pursuant to Fed. R. Civ. P. 12(b)(3) (improper venue) and 28 U.S.C. § 1406(a).  As such, the enforceability of the forum selection clause was subject to a federal procedural device and a federal standard which governs the enforceability of such clauses in federal courts—namely, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and its progeny.  As such, the California federal court was confronted with the task of resolving the issue of whether Aces could avoid enforcement of the forum selection clause based on Ryan's asserted fraud, duress, overreaching, and/or superior bargaining power.  The issue is now presented on a Rule 12(c) motion.  This is a different procedural context in which it is not the court's task to resolve disputed factual issues.  Rather, the court must accept as true the allegations in Aces' amended complaint and determine whether, accepting those allegations as true, there is any set of facts under which Aces would be entitled to relief on its usury claim under California law.  And, this issue is governed by California choice-of-law rules, not federal procedural standards.   As such, the California

13

federal court's ruling on this issue on Ryan's Rule 12(b)(3)/§ 1406(a) motion is by no means dispositive and, in fact, it does not even carry any persuasive value at this procedural juncture.

Moreover, Ryan has not established the extent to which Aces' claims fall within the scope of the choice-of-law provision.  Ryan points out in its reply brief that Judge Ishii found that the forum selection clause in the factoring agreement is valid and enforceable and that Aces' claims fall within the scope of that clause.  That clause, however, has a different scope than the choice-of-law clause.  The forum selection clause applies to "any legal suit, action or proceeding arising out of or related to this Agreement."  On the other hand, the Kansas choice-of-law provision provides that the "rights of the parties hereunder shall be interpreted under and governed as to construction, enforcement and validity by the law of the state of Kansas." Aces contends that its tort claims (Counts I and IV-VII) are not subject to the choice-of-law clause and Ryan has not discussed this issue.  Because Ryan has not discussed the scope of this provision and because the scope of this provision is not necessarily co-extensive with that of the forum selection clause, then, Ryan has not established the extent to which Aces' claims fall within the scope of this provision.  In short, Ryan has not established that the choice-of-law provision is enforceable or that Aces can prove no set of facts which would entitle it to rescission of the agreement of which it is a part.

### 2.     Applicable Law in the Absence of the Choice-of-Law Provision

Ryan argues that, in the alternative, even if the choice-of-law provision is not enforceable, Kansas law would still apply to the parties' dispute under California choice-of-law principles.  In support of this argument, Ryan contends that *Shannon-Vail Five Inc. v. Bunch*,

14

270 F.3d 1207 (9th Cir. 2001), and *Ury v. Jewelers Acceptance Corp.*, 38 Cal. Rptr. 376 (1964), stand for the proposition that the court should apply the law of the place of repayment to this lending agreement. Ryan points out that the factoring agreement designates the place of repayment as "8601 Monrovia, Lenexa, Kansas 66215 or . . . such other address as Factor shall designate in writing." Thus, Ryan contends that Kansas law should apply because the factoring agreement designates Kansas as the place of repayment. The court finds Ryan's argument to be without merit at this procedural juncture.

In *Shannon-Vail*, the Ninth Circuit addressed the issue of whether an interest rate charged under a loan contract was illegal because it was usurious under California law. Despite Ryan's attempt to simplify the court's holding in that case, the court actually set forth a far more complex analysis governing such choice-of-law issues. The court noted that under California law in order "[t]o determine the law governing a contract, California courts look to the relevant statute and, for further guidance, to the choice-of-law principles outlined in the Restatement." 270 F.3d at 1210. Looking to the relevant statute, California Civil Code § 1646 states the traditional conflicts rule that matters pertaining to performance are governed by the place where the contract is to be performed or, if the contract does not indicate a place of performance, according to the law and usage of the place where the contract was made. *Id.* The court found that Nevada was the place of performance not only because repayment was required in Nevada, but also because the loan funds were disbursed in Nevada. *Id.* The court then turned to the Restatement "[f]or a more particularized and nuanced analysis." *Id.* The court discussed four different sections of the Restatement, one of which was § 195, which

15

addresses "Contracts for the Repayment of Money Lent." *Id.* at 1211.   Generally, "the basic rule is that the law of the state in which the money is to be repaid governs." *Id.*   This includes the laws governing the interest rate, including usury laws. *Id.* (quoting the Restatement § 195, cmt. a).   But, the court noted that the second clause of § 195 states the exception to the general rule. *Id.* at 1212.   That is, the local law of the state where the loan is to be repaid applies "'unless, with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties, in which event the local law of the other state will be applied.'" *Id.* (quoting the Restatement § 195).   Further discussing this "unless" clause, the court explained that this clause is "limited to situations where the location of repayment is selected solely to circumvent a state's usury laws, or when the place of repayment otherwise has a very tangential relationship to the contract." *Id.*

> For example, where both the borrower and lender are domiciled in State X, all
> negotiations and contracting for the loan occur in State X, and the intended use
> of the loan is in State X, but the contract provides for repayment in State Y to
> avoid State X's more stringent usury laws.

*Id.*   The court then found that *Shannon-Vail* was "not a case where the parties and the contract had strong connections to California yet the parties structured the contract to evade California's usury law." *Id.* at 1213.   Instead, there were "ample connections to Nevada" so as to warrant application of Nevada law. *Id.*

In this case, however, the allegations in Aces' complaint do not establish connections with the state of Kansas so substantial as to necessarily warrant the application of Kansas law without further inquiry.   To be sure, the fact that Ryan is a Kansas corporation and that the

16

contractually designated place of repayment is in Kansas could be enough to warrant application of Kansas law.   But, the court must undertake a fact-intensive analysis in order to fully resolve this choice-of-law issue.   Furthermore, Aces contends that it needs to conduct discovery to determine if Ryan chose Kansas as the place of repayment and included a Kansas choice-of-law provision in its contract to circumvent California's usury laws.   Accepting the allegations in Aces' complaint as true and viewing all reasonable inferences from those facts in the light most favorable to Aces, as the court must at this procedural juncture, the court cannot say that it appears beyond a doubt that Aces can prove no set of facts under which California law would apply to its usury claims.   *See Mencor Enters., Inc. v. Hetz Equities Corp.*, 235 Cal. Rptr. 464, 466-70 (Cal. Ct. App. 1987) (trial court committed reversible error by dismissing usury claim on the basis of its choice-of-law analysis of the relationship of Colorado to the parties and the contract because that was "a factual issue not reached by the general demurrer to the pleadings").

Moreover, Ryan has not performed this choice-of-law analysis with respect to the various types claims for which it seeks dismissal.   Count I is a claim for payment under duress, Count II is a claim for declaratory relief of no duty to pay usurious interest rates, Count III is a claim for money had and received, Count IV is a claim for rescission, and Count VIII is a claim for violations of the California Unfair Business Practices Act.   The principles announced in *Shannon-Vail* do not necessarily apply to each of these claims; Ryan has not discussed this issue.   Additionally, these claims are not based solely on California usury law.   To be sure, Count II is based entirely on California usury law because it seeks a declaratory judgment

17

concerning the allegedly usurious rates of the factoring agreement.    But only a small aspect of Count I involves allegations of usurious interest rates.   In Count III, Aces asserts a claim for money had and received based on the allegedly usurious interest rates, but in this claim Aces also seeks to recover the money Ryan allegedly converted from Aces to pay Southern Logistics' debt.   With respect to Count IV for rescission, Aces' usury allegations are only a part of this claim.    Again, in this claim Aces alleges that it was forced to pay Southern Logistics' debt.    Likewise, Aces' claim under the California Unfair Business Practices Act alleges not only usurious interest rates but also that Ryan converted money belonging to Aces to pay Southern Logistics' debt, that Ryan wrongfully recorded a UCC-1 financing statement in order to interfere with Aces' existing business relationships and to force Aces to sign a contract (i.e., the factoring agreement), and that Ryan was doing business in California without a license to do so.    Thus, Ryan's arguments concerning the usurious interest claims under California law address only a portion of these claims.   In any event, suffice it to say that Ryan's choice-of-law argument with respect to the usurious aspect of these claims does not address the remaining aspects of these claims.   Accordingly, Ryan has not established that it is entitled to dismissal of these claims.[4]

**B.    Negligent Interference With Contract Claim**

---

[4] The court suggests that the parties and the magistrate judge overseeing pretrial proceedings in this matter consider staging discovery and further motion practice to facilitate resolving this important choice-of-law question at the earliest possible juncture and before proceeding to discovery on and resolution of other issues.

In Count VI of the complaint, Aces asserts a claim for negligent interference with contract.   This claim is based on Ryan's alleged interference with Aces' attempt to secure financing from Phoenix insofar as Ryan allegedly refused to withdraw its UCC-1 financing statement, wrongfully exercised dominion and control over Aces' funds, and made repeated last-minute frivolous demands.   This claim also is based on Ryan's alleged interference with Aces' customers insofar as Ryan allegedly wrongfully exercised dominion and control over Aces' accounts receivables, refused to permit Aces to pay off its obligations to Ryan, and sent communications to Aces' customers which were designed to prevent Aces from rightfully receiving payments from its customers.   The court will grant this aspect of Ryan's motion because, regardless of whether California or Kansas law applies to this claim, Aces' allegations fail to state a claim upon which relief can be granted.

In its order transferring this case to this court, the California federal court noted that it was not considering this claim for purposes of Ryan's motion to transfer because "[n]egligent interference with contractual relationship is not a recognized cause of action in California."   Order (doc. #28), at 13 n.10 (citing authority from the California courts).   This ruling constitutes the law of the case, a doctrine which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *accord Homans v. City of Albuquerque*, 366 F.3d 900, 904 (10th Cir. 2004).   Aces has cited no authority in support of this claim.   Consequently, the court will not revisit this issue but rather will defer

19

to the California federal court's original ruling on this issue.   Accordingly, Aces' amended complaint is without merit as a matter of law under California law.

This claim also is without merit as a matter of law under Kansas law.  Aces has not cited and this court has not located any Kansas case law which would support such a claim.  Indeed, it is generally well settled that a defendant is not liable for negligent interference with contract if the alleged harm is pecuniary and does not derive from physical harm.  *See* Restatement (Second) of Torts § 766C (1979).  The allegations in Aces' amended complaint pertain solely to pecuniary loss and not physical harm.  Accordingly, Ryan's motion is granted with respect to this claim.

## C.      Kansas Declaratory Judgment Act Claim (Count IX)

In Count IX of Aces' amended complaint, Aces seeks relief under the Kansas Declaratory Judgment Act.  This Act, however, sets forth state procedural law, not a federal procedural device.   Ordinarily, the court would be inclined to simply adjudicate this claim under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, rather than the state declaratory judgment act.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) (federal court had to apply the federal Declaratory Judgment Act rather than the state declaratory judgment act).  But, in this case, for reasons discussed below, this claim is without merit insofar as it is based on an alleged violation of Kansas usury laws.  The other aspects of this claim appear to be encompassed within Aces' other declaratory judgment claim (Count II), which this court can adjudicate under the federal Declaratory Judgment Act. Accordingly, the court will dismiss this claim as procedurally improper because it was

20

improperly asserted under the state declaratory judgment act and because converting this claim

to one under the federal Declaratory Judgment Act would be unnecessary.

**D.      Claim Under Kansas Usury Law (Count X)**

Count X of Aces' amended complaint alleges that the factoring agreement is usurious

under Kansas law.   Ryan contends that this claim must be dismissed because, even if the

factoring agreement was a loan (which Ryan disputes), it was a business loan rather than a loan

for personal, family or household purposes.   The applicable Kansas statute provides as follows:

"The interest rates prescribed in subsections (a) and (b) [i.e., the usurious interest rate limits]

. . . shall not apply to a business or agricultural loan.   For the purpose of this section unless a

loan is made primarily for personal, family or household purposes, the loan shall be considered

a business or agricultural loan."   K.S.A. § 16-207(f).   Under this provision, business and

agricultural loans are a recognized exception to Kansas usury statutes.   *Beltz v. Dings*, 27 Kan.

App. 2d 507, 512, 6 P.3d 424, 429 (2000) (recognizing this exception, although finding it did

not apply under the facts of that case because the loan was primarily for personal, family or

household purposes rather than agricultural purposes); *see also Wight v. Agristor Leasing*,

652 F. Supp. 1000, 1014 (D. Kan. 1987) (recognizing that under K.S.A. § 16-207(f) Kansas

usury laws do not apply to transactions for business or agricultural purposes).   The allegations

in Aces' complaint clearly reveal that the factoring agreement, if it was a loan, was a business

loan and not a loan made primarily for personal, family, or household purposes.   Indeed, Aces

raises no argument to the contrary under Kansas law.   Thus, it appears that Aces can prove no

set of facts which would entitle it to relief based on a usury theory under Kansas law.

21

Accordingly, that aspect of Ryan's motion is granted and Aces' usury claims under Kansas law are dismissed.

Instead of arguing in favor of the viability of a usury claim under Kansas law, Aces contends that the court should apply the usury laws of California. Aces' complaint, however, asserts a separate claim under California usury laws in Count II. Therefore, Aces need not reiterate that claim in Count X. Aces' complaint clearly asserts a violation of the Kansas usury statutes in Count X and as such that claim is dismissed because it fails to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Ryan's motion to dismiss (doc. #48) is granted with respect to Aces' negligent interference with contract, Kansas Declaratory Judgment, and Kansas usury law claims. The motion is denied in all other respects.

**IT IS SO ORDERED** this 24th day of May, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

22